A. Barry Cappello (SBN 037835)
abc@cappellonoel.com
Leila J. Noël (SBN 114307)
lnoel@cappellonoel.com
Richard Lloyd (SBN 332101)
rlloyd@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, California 93101
Telephone:  (805) 564-2444
Facsimile:    (805) 965-5950

Attorneys for Plaintiff
H. Ty Warner

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H. TY WARNER, an individual,<br><br>　　　　　　Plaintiff,<br>v.<br>SANTA BARBARA MUSEUM OF NATURAL HISTORY, INC., a California non-profit corporation,<br>　　　　　　Defendant. | Case No.:  2:25-cv-8779<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **Breach of Contract**<br>2. **Breach of Covenant of Good Faith and Fair Dealing**<br>3. **Intentional Misrepresentation**<br>4. **Negligent Misrepresentation**<br>5. **Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

# NATURE OF ACTION

1. Plaintiff H. Ty Warner, commonly known as Ty Warner, is a successful businessman, noted philanthropist, and resident of Oak Brook, Illinois.

2. Defendant Santa Barbara Museum of Natural History, Inc. is a California non-profit corporation that owns and operates the currently-named Santa Barbara Museum of Natural History Sea Center (the "Sea Center"), located on Stearns Wharf in Santa Barbara.

3. The Sea Center began operation in 1987 and served as a visitor center for the Channel Islands Marine Sanctuary. Due to the aging, dilapidated facilities and demand outstripping the Sea Center's ability to house visitors, in October 2000 the Sea Center began a fundraising campaign to fund the extensive modernization and redevelopment of the Sea Center property. In September 2003, the Sea Center closed its doors to the public to prepare for demolition. At that time, the Sea Center was still significantly short of its estimated redevelopment cost by approximately $1.5 million.

4. Shortly after the Sea Center closed its doors to the public, negotiations commenced between Mr. Warner and the Sea Center to provide the final funding that would allow the redevelopment to fully proceed. An agreement was reached where Mr. Warner would provide a cash donation of $1.5 million to the Sea Center, and in exchange, the Sea Center would be named the "Ty Warner Sea Center" for no less than 25 years from the date of opening.

5. In 2014, less than halfway through the contractual naming period, the Sea Center reneged on its agreement. The Sea Center initially claimed it had the right to remove Mr. Warner's name due to him pleading guilty to one count of tax evasion, but it represented to the public that the rebranding was part of an effort to bring the Museum of Natural History and the Sea Center closer together, as the tenth anniversary of the Sea Center's redevelopment approached. Based on subsequent information received, Mr. Warner could not determine whether the

1  rebranding effort may have been the true reason for removing his name.  Mr.
2  Warner further was led to believe that the Sea Center was open to restoring his
3  name at a later date, including because the Sea Center never stated, or even
4  indicated, any intent to return even a portion of the sizeable donation it received and
5  continued to benefit from.  Mr. Warner believed and understood that by keeping the
6  entirety of his donation, when only a portion of the duration of the naming
7  opportunity had elapsed, the Sea Center planned to reinstate his name on the
8  building after some passage of time.  On information and belief, Mr. Warner alleges
9  that the Sea Center's purported desire to rebrand itself to be more closely linked to
10 the Museum of Natural History was false: as late as August 2025, the Sea Center
11 advertised at the Santa Barbara Airport with no mention of any connection to the
12 Museum of Natural History.
13      6.      In December 2024, Mr. Warner was reviewing his charitable
14 contributions and contacted the Sea Center to request a final answer regarding the
15 restoration of his name to the Sea Center.  In response, he was told no, but that the
16 Sea Center was open to naming opportunities at the Sea Center for Mr. Warner.
17 After months of internal discussions, on May 16, 2025, the Sea Center invited Mr.
18 Warner to make another substantial donation to the Sea Center, this time in excess
19 of $50 million.  In exchange, the Sea Center proposed installing a plaque on an
20 internal Sea Center wall recognizing Mr. Warner's prior "transformative gift that
21 enabled the Museum to renovate the Sea Center – creating the beautiful aquarium
22 you enjoy today."  The Sea Center proposed additional language, as well: "Twenty
23 years later, in 2025, Mr. Warner continued his extraordinary generosity by
24 establishing a fund to support the Sea Center and its programs for future
25 generations.  His enduring legacy ensures that this facility will continue to inspire
26 wonder, educate future ocean stewards, and delight visitors of all ages for years to
27 come." (Ex. 6, p. 3.)
28 ///

1    7.     When he received the proposal, Mr. Warner realized the Sea Center's previously stated rationale for removing his name was false.  Given the Sea Center's eager willingness to enter into yet another benefactor relationship with him, it became apparent that the Sea Center was completely willing to have its name associated with his, that the tax issue previously given as a reason to remove his name was pretextual, and that the removal of his name from the building was due to an ulterior and unauthorized reason.  Mr. Warner also realized that for close to a decade, he had been induced into inaction, based on actions and conduct that the Sea Center was open to restoring his name on the Sea Center, while all along there was no such intention.

8.     Fundamentally, this action therefore seeks to restore and rebalance the equities between Mr. Warner and the Sea Center.  Acting in good faith, Mr. Warner provided an exceedingly generous donation of $1.5 million, a donation that allowed the Sea Center to proceed with its much-touted redevelopment, explicitly in return for the placement of his name on the building for a defined period of time.  The Sea Center entered into the agreement, with its dual consideration, when it was convenient, and breached the agreement when it was not.  Under false pretenses, the Sea Center unceremoniously scrubbed Mr. Warner's name from the building, kept all his money, and kept Mr. Warner in the dark for years regarding its true motives and intent.

**JURISDICTION AND VENUE**

9.     Jurisdiction is proper under 28 U.S.C. § 1332(a) because Plaintiff is a resident of Oak Brook, Illinois, Defendant has its principal office in Santa Barbara, California, and the amount in controversy exceeds $75,000.  Diversity jurisdiction is therefore present, and this Court has jurisdiction.

10.    Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Defendant has its principal office in Santa Barbara, California, a substantial part of the events or

omissions giving rise to the claims occurred in Santa Barbara, California, and the property that is the subject of the action is located in Santa Barbara, California.

## PARTIES

11. Plaintiff H. TY WARNER ("Plaintiff") is an individual and resident of Oak Brook, Illinois.

12. Defendant SANTA BARBARA MUSEUM OF NATURAL HISTORY, INC. ("Defendant") is a California non-profit public benefit corporation, whose principal office is in Santa Barbara, California.

## GENERAL ALLEGATIONS

13. Plaintiff is a successful, self-made businessman. He is the Chairman, CEO, and founder of Ty, Inc., the largest manufacturer of plush toys in the world. Plaintiff also owns hotels, properties and golf courses worldwide, several of which are in the Santa Barbara, California region.

14. Plaintiff is also a noted philanthropist. Over the past two decades, Plaintiff and his companies have donated in cash, publicly traded stock, and product in excess of $300 million to various charitable entities and causes, including the American Red Cross, the Children's Hunger Fund, Save the Children, the Mayo Clinic and many others. Most recently, in May 2025, Plaintiff personally contributed $5 million to fund the renovation of Dwight Murphy Field in Santa Barbara.

15. Defendant Santa Barbara Museum of Natural History, Inc. is a 501(c)(3) non-profit public benefit corporation founded in 1916. In 1986, Defendant opened the Sea Center on Stearns Wharf to serve as a visitor center for the Santa Barbara Channel Marine Sanctuary.[1] However, the newly-opened Sea Center was forced to close almost immediately, due to a fire that caused damage to the property.[2] A decade later, in November 1998, a catastrophic fire burned down

---

[1] https://dailynexus.com/2003-10-09/wave-goodbye-to-shrimpy-sea-center/
[2] https://stearnswharf.org/history/

several businesses, causing a significant portion of the Wharf to be closed for renovation.[3]

16. The following year, Defendant concluded the Sea Center was too small, did not serve the functions it had evolved into, and that the Sea Center was unable to effectively serve the demand from visitors to Stearns Wharf.[4] Defendant envisaged a multi-million dollar donor-funded renovation that would transform the Sea Center into a two-story, 6,700 square foot structure that would more than double the previous capacity, and provide a modern, visitor-focused experience that included interactive exhibits and hands-on displays.[5]

17. In or about October 2000, Defendant embarked on a fund-raising mission to raise funds for the redevelopment of the Sea Center. By September 2003, the Sea Center had raised approximately $6.5 million of the estimated $8 million required, and closed its doors to prepare for the demolition and construction of the new facility.[6]

18. In early 2004, Defendant and Plaintiff began negotiating the terms of a donation agreement, whereby Plaintiff would donate a substantial sum of money to the Sea Center in exchange for the right to name the new Sea Center. The purpose of the donation was to complete the Sea Center's fund-raising campaign and thereby allow Defendant to move forward with the entirety of its planned renovation.

19. The terms of the donation agreement between Plaintiff and Defendant are documented in an April 20, 2004 letter, signed by Plaintiff and Defendant's then-Executive Director, Karl Hutterer. The April 20, 2004 letter is attached as **Exhibit 1** and incorporated by reference in its entirety (the "Donation/Name Agreement").

---

[3] *Id.*
[4] https://dailynexus.com/2003-10-09/wave-goodbye-to-shrimpy-sea-center/
[5] See https://scc.ca.gov/webmaster/ftp/pdf/sccbb/2004/0405/0405Board03_Sea_Center.pdf
[6] https://dailynexus.com/2003-10-09/wave-goodbye-to-shrimpy-sea-center/

20. The Donation/Name Agreement provided that in exchange for Plaintiff's cash donation of $1.5 million, Defendant agreed to name the new Sea Center the "Santa Barbara Museum of Natural History Ty Warner Sea Center." The naming rights included use of the name "Ty Warner Sea Center" as the name of the new building; placement of the name "Ty Warner Sea Center" on the front, and possibly the back, of the building; and use of the "Ty Warner Sea Center" name on Sea Center stationary, as well as prominently on the donor recognition panel in the reception area of the Sea Center. The agreed naming opportunity was for the life of the structure or thirty-five (35) years, whichever came first, but in no event less than twenty-five (25) years from the date of the gift.

21. Pursuant to the Donation/Name Agreement, Plaintiff possesses the right and Defendant correspondingly was obliged, to maintain the name "Ty Warner Sea Center" until at least April 23, 2030.

22. Referencing recent prosecutions of certain celebrities and high-profile investors and companies, Defendant reserved the right to terminate the Donation/Name Agreement in the event Plaintiff became subject to or was found guilty of such prosecution.

23. On October 20, 2004, pursuant to the Donation/Name Agreement, Plaintiff transmitted the sum of $1,500,000.00 to Defendant. Defendant continued its renovation project and, pursuant to the Donation/Name Agreement, Plaintiff worked with Defendant on the signage to be displayed on the new Sea Center building, and a tentative opening date was set for December 28, 2004.

24. On or about April 23, 2005, the Sea Center re-opened to the public. As a result of the extensive renovations—made possible only by Plaintiff's substantial donation—the Sea Center was transformed into a modern, interactive and visitor-focused experience, described by Defendant in their May 2005 publication, SBNature, as "overflowing with interactive exhibits that connect visitors to the marine environment. The building looks and feels like a real marine

sciences laboratory complete with sampling equipment, testing equipment, and other activities that get visitors involved in marine science." Though under no obligation to do so, Plaintiff also designed and provided Defendant with a batch of custom-designed "Opie" limited edition Beanie Babies, created in the form of an octopus to reflect the Sea Center's new logo, for Defendant to sell at the Sea Center's visitor shop.





25. In further recognition of Plaintiff's contribution, Defendant granted Plaintiff a lifetime "President's Circle" level of membership. In the months that followed, Defendant gave glowing reports to Plaintiff touting the success of the

8
COMPLAINT FOR DAMAGES

renovation, including that attendance was exceeding projections, and that sales at the store were far exceeding projections, a success attributed to Plaintiff's creation of the "Opie" Beanie Baby, which drew visitors specifically to purchase the "one-of-a-kind" Beanie Baby.

26. For the majority of the decade that followed, the Ty Warner Sea Center served as a well-known and highly popular visitor destination for both locals and out-of-town tourists. On information and belief, Defendant benefited both financially and reputationally from its association with Plaintiff.

27. In 2009, Plaintiff disclosed an overseas bank account pursuant to the government's Voluntary Disclosure Program. He provided full cooperation to the government under the Program but did not receive amnesty from criminal prosecution. On October 2, 2013 Plaintiff pled guilty in US Federal Court to one count of tax evasion related to the overseas account. On January 14, 2014, Plaintiff was sentenced to pay back taxes, pay civil and criminal penalties, perform 500 hours of community service for three underserved Chicago high schools, and complete two years of probation. Plaintiff promptly paid all amounts due and fulfilled all other obligations.

28. During Plaintiff's sentencing, the district court took particular note of Plaintiff's charitable endeavors, stating Plaintiff's "private acts of kindness, generosity and benevolence are overwhelming" and stated "[n]ever have I had a defendant in any case—white collar crime or otherwise—demonstrate the level of humanity and concern for the welfare of others as has Mr. Warner."[7] The district court also took account of Plaintiff's efforts to voluntarily comply with his tax obligations by submitting to the IRS offshore voluntary disclosure program, a program that thousands of taxpayers were able to take advantage of, but Plaintiff was ultimately deemed ineligible, due to the pending investigation.[8]

---

[7] *United States v. Warner*, 792 F.3d 847, 854 (7th Cir. 2015).

[8] *United States v. Warner,* 792 F.3d 847, 850 (7th Cir. 2015).

29. Despite Plaintiff's highly publicized sentencing, Defendant did not immediately move to terminate the Donation/Name Agreement.

30. On June 27, 2014, eight months after Plaintiff entered his plea, and five months after sentencing, Defendant sent Plaintiff a letter stating that, purportedly, it was electing to exercise its right to terminate the Donation/Name Agreement and remove Mr. Warner's name from the Sea Center. In that same letter, however, Defendant stated that it would represent to the public that the name change was part of a revitalization plan to strengthen the connection between the Museum and the Sea Center. A true and correct copy of the June 27, 2014 letter is attached as **Exhibit 2**.

31. On July 3, 2014, Plaintiff wrote to Defendant requesting they reconsider their decision, and highlighted that many major brands, including Disney, McDonald's and the NFL, all continued to have their products associated with Plaintiff and his logo. A true and correct copy of Plaintiff's July 3, 2014 correspondence is attached as **Exhibit 3**.

32. Over the following months, Plaintiff and Defendant exchanged correspondence, and Plaintiff's representatives met with Defendant's representatives on multiple occasions. Based on the actions and conduct of Defendant's representatives, Plaintiff could not determine whether Defendant's true purpose in removing Plaintiff's name was not the reason given to Plaintiff – the tax issue – but actually was due to Defendant's desire to bring the Museum of Natural History and Sea Center brands closer together, to coincide with the tenth anniversary of the Sea Center. Plaintiff further understood and believed, based on its actions and conduct, that Defendant remained open to restoring Plaintiff's name on the Sea Center at a later date, after the tenth anniversary of the Sea Center had passed, but before April 23, 2030, when the twenty-five (25) year naming period was due to expire.

///

33. Defendant thereafter removed Plaintiff's name from the building and its marketing materials, and rebranded the Sea Center as the "Santa Barbara Museum of Natural History Sea Center." At the time, Plaintiff did not know that the removal of his name was done for an ulterior reason; in any event, since he otherwise would be entitled to a full or partial refund of his donation, Plaintiff reasonably believed that the name removal would be only temporary, and that Defendant remained open to restoring his name on the Sea Center at a later date. Plaintiff therefore refrained from requesting a full or partial refund of the money paid and refrained from pursuing legal action against Defendant.

34. In December 2024, Plaintiff undertook a review of his charitable endeavors. Noting that over five years remained on the Sea Center naming right period, Plaintiff, through counsel, wrote to Defendant on December 18, 2024 and requested a "final answer" on whether Defendant would consider restoring Plaintiff's name on the Sea Center. A true and correct copy of Plaintiff's correspondence is attached as **Exhibit 4.**

35. On December 19, 2024, Defendant responded stating that it was unwilling to reconsider its prior decision, but that Defendant was open to meeting privately with Plaintiff. A true and correct copy of Defendant's correspondence is attached as **Exhibit 5**. In the course of those discussions, Defendant stated that it wanted to associate with Plaintiff on a naming endeavor, and would make a written proposal to Plaintiff.

36. On May 16, 2025, Defendant sent a letter to Plaintiff inviting a donation in excess of $50 million in exchange for a plaque on the Sea Center's interior wall, in part recognizing Plaintiff's 2004 "transformative gift that enabled the Museum to renovate the Sea Center – creating the beautiful aquarium you enjoy today." A true and correct copy of Defendant's May 16, 2025, correspondence is attached as **Exhibit 6**.

///

37. Upon receipt of Defendant's correspondence, Plaintiff realized that Defendant's true motive for renaming the Sea Center in 2014 had nothing to do with Plaintiff's tax issue, and was simply a ruse and mechanism to keep all of Plaintiff's money, while undertaking a rebranding effort and soliciting additional donations from other individuals.

38. Plaintiff further realized, contrary to Defendant's prior actions and conduct, that Defendant never had any intent to reconsider their decision to remove Plaintiff's naming rights, and that Defendants' actions and conduct in that regard were to lull Plaintiff into refraining from demanding a full or partial return of his donation and/or commencing litigation against Defendant.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

39. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

40. On or about April 20, 2004, Plaintiff and Defendant entered into a contract, the terms of which are set forth in the Donation/Name Agreement, attached as **Exhibit 1**.

41. Plaintiff did all, or substantially all, of the significant things the Donation/Name Agreement required, including payment of the $1.5 million to Defendant to fund the renovation of the Sea Center.

42. Defendant failed to fully perform its obligations under the Donation/Name Agreement and breached the terms of the Donation/Name Agreement, when it removed Plaintiff's name from the Sea Center building, and rebranded the Sea Center as the Santa Barbara Museum of Natural History Sea Center, approximately fifteen (15) years before the expiry of the guaranteed twenty-five (25) year naming period. Defendant further failed to perform its obligations by failing to return Plaintiff's donation, either in full or in part, when it elected to no longer perform its obligations.

43. Plaintiff was harmed because Plaintiff did not, and continues not to, receive the full value of the bargained-for benefit, while Defendant enjoys the full value of consideration paid by Plaintiff without being required to perform its own obligations.

44. Defendant's breach of contract was, and continues to be, a substantial factor in causing Plaintiff harm.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

45. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46. On or about April 20, 2004, Plaintiff and Defendant entered into a contract, the terms of which are set forth in the Donation/Name Agreement, attached as **Exhibit 1**.

47. Plaintiff did all, or substantially all, of the significant things the Donation Agreement required, including payment of the $1.5 million to Defendant to fund the renovation of the Sea Center.

48. Defendant failed to perform its obligations under the Donation/Name Agreement, and breached the terms of the Donation/Name Agreement, by removing Plaintiff's name from the Sea Center building and rebranding the Sea Center as the Santa Barbara. Defendant further failed to
perform its obligations by failing to return Plaintiff's donation, either in full or in part, when it elected to no longer perform its obligations.

49. Defendant, communicating through its representatives, did not act fairly and in good faith, including misleading Plaintiff about the true reasons for removing Plaintiff's name from the Sea Center; leading Plaintiff to believe that Defendant was open to restoring Plaintiff's name at a
later date, thus lulling Plaintiff into inaction; and failing to return some or all the consideration paid by Plaintiff for the naming rights.

50. As a result of Defendant's conduct, Plaintiff was deprived of the full benefit of the bargained-for naming rights, and Defendant has retained the benefit of the full consideration paid without fully performing its obligations.

51. Defendant's conduct was, and continues to be, a substantial factor in causing Plaintiff harm.

## THIRD CAUSE OF ACTION

### (Intentional Misrepresentation)

52. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53. Defendant represented in its June 27, 2014 correspondence to Plaintiff that the reason for removing Plaintiff's name was attributable to his tax issue. Plaintiff further understood, through Defendant's actions and conduct, that Defendant was open to restoring Plaintiff's name at a later date, but before the expiry of the twenty-five (25) year naming period.

54. Defendant's stated reason for removing Plaintiff's name from the Sea Center was false and/or Defendant's statement that it was open to restoring Plaintiff's name at a later date was false.

55. Defendant knew that the representations were false when they were made, and/or Defendant made said representations recklessly and without regard for the truth.

56. Defendant intended that Plaintiff rely on the false representations.

57. Plaintiff did, in fact, rely on Defendants' false representations, and in reliance on Defendants' representations, refrained from further investigating the true reason for the Sea Center's removal of his name from the Sea Center; refrained from seeking restoration of his naming rights and/or demanding a return of some or all the $1.5 million consideration paid.

58. Prior to December 2024 and/or May 2025, Plaintiff did not know the false nature of Defendant's representations. Plaintiff first became aware of the false

nature of Defendants' representations regarding Defendant's potential openness to restoring his naming rights when Defendant confirmed, in December 19, 2024, correspondence, that it never intended to restore Plaintiff's naming rights. Plaintiff then first became aware of the false nature of Defendants' representations regarding the reason given for terminating his naming rights on or about May 16, 2025, when Defendant overtly solicited a second, greater, donation from Plaintiff, thus making clear that Defendant never had any real concern about reputational harm associated with Plaintiff's tax issue, and instead terminated Plaintiff's naming rights for ulterior, unauthorized motives.

59. Plaintiff was harmed because Defendant's false representations induced Plaintiff to refrain from further investigating Defendant's stated reasons; refrain from demanding a full or partial refund of his donation and/or restoration of his name rights; and refrain from taking legal action against Defendant; all thereby allowing Defendant to retain the full consideration paid by Plaintiff for the naming rights, while avoiding its corresponding obligation to perform.

60. Plaintiff's reliance on Defendants' representations was a substantial factor in causing Plaintiff harm.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

61. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62. Defendant represented in its June 27, 2014 correspondence to Plaintiff that the reason for removing Plaintiff's name from the Sea Center building was due to his tax issue. Defendant further represented, through actions and conduct, that Defendant was open to restoring Plaintiff's name at a later date.

63. Defendant's representations were not true, and even if Defendant may have believed the representations were true, Defendant had no reasonable grounds to believe that its representations were true when they were made.

64. Defendant intended Plaintiff to rely on its representations, and Plaintiff reasonably relied on Defendant's representations.

65. Prior to December 2024, Plaintiff was unaware of the false nature of Defendant's misrepresentations regarding their potential openness to restoring Plaintiff's naming rights. Plaintiff first became aware of the false nature of Defendants' representations when Defendant confirmed in correspondence that it never intended to restore Plaintiff's naming rights. Prior to May 2025, Plaintiff did not know that the reason given by Defendant for terminating the Donation/Name Agreement was false; that changed when Defendant overtly solicited a second, greater, donation from Plaintiff, thus making clear that Defendant never had any real concern about reputational harm associated with Plaintiff's tax issue, and instead terminated Plaintiff's naming rights for ulterior, unauthorized motives.

66. Plaintiff was harmed because Defendant's false representations induced Plaintiff to refrain from further investigating Defendant's stated reasons; refrain from demanding a full or partial refund of his donation and/or restoration of his name rights; and refrain from taking legal action against Defendant; all thereby allowing Defendant to retain the full consideration paid by Plaintiff for the naming rights, while avoiding its corresponding obligation to perform.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

67. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68. Defendant received the sum of $1.5 million from Plaintiff, in exchange for which Defendant agreed to name the Sea Center the "Ty Warner Sea Center" for a period of not less than twenty-five (25) years.

69. Approximately nine years into the twenty-five (25) year period, Defendant unilaterally and without good cause terminated Plaintiff's naming rights, but failed to return any portion of the $1,500,000 consideration paid by Plaintiff.

70. Defendant benefited tremendously at Plaintiff's expense, because Plaintiff's donation enabled Defendant to undertake an extensive renovation of its property, while Plaintiff has been prevented from enjoying the benefit of the bargained-for naming rights.

71. It would be unjust for Defendant to retain the full benefit of Plaintiff's donation, without restoring Plaintiff's name on the Sea Center, and/or refunding all or part of the consideration paid by Plaintiff for the naming rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Compensatory economic damages subject to proof at trial, including pre- and post-judgment interest.

2. Emotional distress and disturbance damages.

3. Punitive damages.

4. Restitution.

5. Attorneys' fees to the extent permitted by law and costs of suit.

6. For such other equitable or legal relief as the Court may deem just and proper.

DATED: September 16, 2025        CAPPELLO & NOËL LLP

By: */s/ A. Barry Cappello*
    A. Barry Cappello
    Leila J. Noël
    Richard Lloyd
    Attorneys for Plaintiff H. Ty Warner

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable in this action.

DATED: September 16, 2025         CAPPELLO & NOËL LLP

By: */s/ A. Barry Cappello*
A. Barry Cappello
Leila J. Noël
Richard Lloyd
Attorneys for Plaintiff H. Ty Warner

COMPLAINT FOR DAMAGES

**CERTIFICATE OF SERVICE**

I, A. Barry Cappello, hereby certify that on September 16, 2025, I electronically filed **COMPLAINT FOR DAMAGES** with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notifications to all counsel of record.

*/s/ A. Barry Cappello*
A. Barry Cappello